James W. Anderson (#9829)
Walter A. Romney (#7975)
Victoria B. Finlinson (#15103)
**CLYDE SNOW & SESSIONS**
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah  84111-2216
Telephone (801) 322-2516
Facsimile (801) 521-6280
jwa@clydesnow.com
war@clydesnow.com
vbf@clydesnow.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE:<br><br>RALPH DAVID BRINTON,<br><br>Debtor. | Bankruptcy No. 16-27945<br><br>[Chapter 13]<br><br>Adversary Proceeding No._____<br><br>Honorable Joel T. Marker<br><br>[Filed Electronically] |
| JAMES WULFENSTEIN, an individual; WULFENSTEIN CONSTRUCTION, INC., a Utah corporation; and WADE FREY, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>RALPH D. BRINTON, an individual.<br><br>Debtor. | |

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

{01140984-2 }

Pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6), and Federal Rules of Bankruptcy Procedure 4007 and 7001, Plaintiffs James Wulfenstein ("Wulfenstein"), Wulfenstein Construction, Inc. ("Wulfenstein Construction"), and Wade Frey ("Frey") (collectively "Creditors") hereby complain of Debtor Ralph D. Brinton ("Debtor") and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Wulfenstein Construction is, and was at all times relevant herein, a Nevada Corporation, duly licensed and in good standing.

2. Wulfenstein is, and was at all times relevant herein, a resident of the State of Nevada.

3. Frey is, and was at all times relevant herein, a resident of the State of Utah.

4. Debtor is an individual and a resident of Salt Lake County, State of Utah.

5. Debtor initiated the underlying bankruptcy case by filing a voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code") on September 8, 2016.

6. The case was converted to chapter 7 of the Bankruptcy Code by order dated January 5, 2017.

7. Debtor is now seeking a discharge under Section 727 of the Bankruptcy Code.

8. By this complaint, Creditors seek a determination that the Debtor's debt to Creditors are excepted from discharge under Sections 523(a)(2), (4) and (6) of the Bankruptcy Code.

9. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

10. Venue is proper pursuant to 28 U.S.C. §§ 1408 and/or 1409.

11. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## GENERAL ALLEGATIONS

12. Debtor represented himself as the owner of Wiltshire Enterprises, LLC at all times.

13. Debtor operated Wiltshire in an haphazard manner for his own personal benefit as is evidenced by:

   a. Absence or inaccuracy of company records;

   b. Failure to maintain arm's length relationships and to preserve a proper and legally sufficient separation of interest between Debtor and the company;

   c. Failure to observe company formalities in terms of behavior and documentation;

   d. Failure to pay compensation or dividends;

   e. Nonfunctioning of company members or mangers;

   f. Significant undercapitalization at the time of Wiltshire's formation, as well as during the transactions and dealings thereafter;

   g. Active participation in Wiltshire affairs by those who are not members or managers, including but not limited to Debtor's handling and control of every aspect of the financial dealings of Wiltshire;

   h. Exercise of control of Wiltshire by those who are not members or managers; and/or;

   i. General lack of respect for and attention to the legalities and formalities required by law;

14. Debtor represented himself as Wiltshire throughout the entirety of the negotiations and financial transactions at issue.

15. As such, Debtor is charged with Wiltshire's debt to Creditors.

16. Creditors' claim arises from Debtor's fraudulent receipt, transfer, and subsequent loss of Creditors' funds in the amount of $1,900,000.

17. On or about August of 2008, Creditors retained the services of Stanford A. Graham or Graham PC (collectively "Graham") to provide legal, financial, and brokering services in effecting certain financial agreements with Wiltshire.

18. Graham and Debtor represented to Creditors that if they invested or deposited funds through Graham's law office, the following would occur:

   a. The funds would be transferred in trust to Debtor, for the express purpose of purchasing a note previously executed by Creditors. Debtor represented that he has already entered into an agreement to purchase said note from its holder, Community Bank of Nevada ("CBN").

   b. Debtor agreed to use Creditors' funds to purchase, through a subsidiary or third party, certain real estate—including but not limited to Cottage Grove Estates, LLC, consisting of 98 residential lots in southern Nevada.

   c. That if the above-described purchases were not effectuated, Creditors' funds would be refunded to them.

19. The terms of the agreement were memorialized in the Finance Agreement, drafted by Graham, which was executed by the parties on March 11, 2009.

20. The Finance Agreement stated that Wulfenstein would deposit $1,700,000 and Frey would deposit $200,000 in trust to Debtor for the express purpose of facilitating financial transactions undertaken by Debtor to purchase notes from CBN or Silver State Bank relating to the Cottage Grove Development in Nye County, Nevada ("Cottage Grove Notes").

21. In exchange for the receipt of the funds deposited by Creditors, Debtor agreed, among other things, to return those principal funds to Creditors regardless of the ultimate success or failure of the financing transactions. The Finance Agreement set forth the following schedule for said return of funds:

   a. $300,000 shall be returned to Wulfenstein no later than 67 days after such funds are wired to Wiltshire or its agents, including Debtor (May 18, 2009);

   b. $1,200,000 shall be returned to Wulfenstein no later than 97 days after such funds are wired to Wiltshire or its agents, including Debtor (June 17, 2009).

   c. $200,000 shall be returned to Frey no later than 97 days after such funds are wired to Wiltshire or its agents, including Debtor (June 17, 2009).

22. In addition to the repayment of Creditors' deposited funds, Debtor agreed to utilize the $200,000 remaining portion of Creditors' funds to purchase the Cottage Grove Notes, together with all of the banks' right, title, and interest in and to said notes secured by a Deed of Trust and personal guarantees, as well as any claims or litigation related to the notes.

23. Debtor also agreed to return to Creditors some or all of their capital investments in a separate project known as the Mountain Fall Paradiso Development.

24. Creditors provided all the funds to Debtor as required under the Finance Agreement and thereby complied with the Finance Agreement.

25. Upon information and belief, Creditors' funds were wired on March 13, 2009 to Credit Suisse in Europe at the instruction of Debtor from where Creditors' funds inexplicably disappeared or were stolen.

26. Debtor has failed to refund Creditors' money in accordance with the terms of the Finance Agreement.

27. Creditors have made demand on Debtor for payment, but Debtor has failed and/or refused to repay said monies to Creditors.

28. Despite Creditors' numerous requests, Debtor has still failed and/or refused to provide any accounting as to where the funds at issue were sent or diverted or the present location or character of those funds.

**FIRST CAUSE OF ACTION**
(Debt Excepted from Discharge pursuant to 11 U.S.C. § 523(a)(2))

29. Creditors incorporate by reference the allegations contained in the preceding paragraphs.

30. Debtor's conduct caused damage to Creditors for which Debtor is liable.

31. Debtor is liable for money obtained by Debtor under false pretenses, false representation, or actual fraud, including but not limited to, accepting Creditors' funds with the agreement that said funds would be used to purchase the Cottage Grove Notes in compliance with the Finance Agreement, all the while intending to breach the Finance Agreement and not use those funds for that purpose. Such action by Debtor constituted means to obtain the loan, which he knew were false, or were in reckless disregard of the truth.

32. Debtor is further liable for money obtained by Debtor under false pretenses, false representation, or actual fraud, including but not limited to, accepting Creditors' funds with the

agreement that said funds would be repaid to Creditors regardless of the transaction's success, in compliance with the Finance Agreement, all the while intending to breach the Finance Agreement and not return the funds at issue to Creditors. Such action by Debtor constituted means to obtain the loan, which he knew were false, or were in reckless disregard of the truth.

33. Debtor knew that he would be unable to repay the funds fraudulently received from Creditors.

34. Creditors reasonably relied on Debtor's representations, including but not limited to that the funds deposited by Creditors would be used to purchase the Cottage Grove Notes and the funds would be returned to Creditors.

35. As a result, the $1,900,000 debt owed to Creditors by Debtor should be excepted from discharge by operation of Section 523(a)(2) of the Bankruptcy Code.

## SECOND CAUSE OF ACTION
(Debt Excepted from Discharge pursuant to 11 U.S.C. § 523(a)(4))

36. Creditors incorporate by reference the allegations contained in the preceding paragraphs.

37. Creditors entrusted Debtor as trustee of $1,900,000 for the purpose of facilitating the purchase the Cottage Grove Notes. Debtor owed Creditors a fiduciary duty with respect to the funds placed in Debtor's care by Creditors as a trustee and/or fiduciary.

38. Debtor breached that duty by failing to exercise due care in the investigation, negotiation, execution, transaction, and/or monitoring of those agreements and dealings, putting Creditors' funds at risk and unnecessarily and unreasonably, when such risk was foreseeable given Debtor's experience in such dealings.

39. Debtor further breached his fiduciary duty by omitting such risks in discussions wand correspondence with Creditors.

40. Debtor was given the $1,900,000 on the basis that Debtor would serve in this trustee capacity for Creditors, executing such fiduciary duties faithfully and honestly.

41. Debtor misappropriated $1,900,000 of Creditors' funds.

42. Such misappropriation was done in Debtor's capacity as trustee and/or fiduciary, which constituted a breach of his fiduciary duty.

43. Debtor fraudulently accepted the $1,900,000 in exchange for the guarantee Creditors would be repaid regardless of whether the deal was successful while having no intention of repaying Creditors' funds.

44. Debtor fraudulently accepted the $1,900,000 for purpose of facilitating the purchase of the Cottage Grove Notes while having no intention of using the money for that purpose.

45. Debtor's conduct constituted fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and should be exempted from discharge by operation of Section 523(a)(4) of the Bankruptcy Code.

### THIRD CAUSE OF ACTION
(Debt Excepted from Discharge pursuant to 11 U.S.C. § 523(a)(6))

46. Creditors incorporate by reference the allegations contained in the preceding paragraphs.

47. Debtor willfully and maliciously lied to Creditors to get the $1,900,000 and thereafter stole or misappropriated that money.

48. Debtor did the acts complained of herein with the intent to cause injury to Creditors.

49. As such, Debtor's debt to Creditors should be excepted from discharge under 11 U.S.C. § 523(a)(6).

## PRAYER FOR RELIEF

WHEREFORE, Creditors pray for judgment in its favor against Debtor, for a determination that the debt owed to Creditors are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6), and for such other and further relief as the Court deems just and proper.

DATED this 4th day of April, 2017.

CLYDE SNOW & SESSIONS

/s/
James W. Anderson
Walter A. Romney
Victoria B. Finlinson
*Attorneys for Plaintiffs*

**Serve Debtor at:**
7762 Forest Bend Drive
Salt Lake City, UT 84121

{01140984-2 }                                        9